## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS RIVERA o/b/o V.A.R., | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | NO. 21-cv-03845-RAL |
| Acting Commissioner of Social Security, | : | |

**RICHARD A. LLORET**                                                                                                     October 27, 2021
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Luis Rivera, on behalf of his minor daughter, V.A.R., seeks review of the denial of his claim for Social Security Supplemental Security Income ("SSI"). The Administrative Law Judge ("ALJ") found that V.A.R. suffers from two severe impairments, but found that she does not suffer from the functional equivalent of a listing condition. I cannot determine if the ALJ's denial of disability benefits was supported by substantial evidence, because she relied upon an incorrect factual determination when weighing a medical opinion that favored a disability determination. Because the ALJ must reweigh the medical opinion against the other evidence, I will remand the case to the Commissioner rather than award benefits.

## PROCEDURAL HISTORY

On December 11, 2018, Mr. Rivera filed a claim on behalf of V.A.R. for SSI, alleging a disability beginning on January 1, 2014. Administrative Record ("R.") 12, 58. His claim was denied on April 17, 2019. R. 71-74. On May 29, 2019, Mr. Rivera requested an administrative hearing before an ALJ. R. 77. The ALJ held a hearing on

January 9, 2020. R. 29. The ALJ denied Mr. Rivera's claim on February 6, 2020. R. 12. Mr. Rivera appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council ("Appeals Council") on March 20, 2020. R. 120-21. On June 29, 2021, the Appeals Council reviewed and upheld the ALJ's decision. R. 1. This appeal followed. The parties consented to the jurisdiction of a U.S. Magistrate Judge (Doc. No. 6) and have briefed the appeal. Doc. No. 10 ("Pl. Br."), 11 ("Comm'r Br."), and 12 ("Pl. Reply").

## FACTUAL BACKGROUND

### A. The Claimant's Background

V.A.R. was born on October 31, 2009. R. 13. She was a preschool aged child at the time of onset of the disability, and a school-aged child on the date of the SSI application and at the time of the ALJ's hearing. R. 13; 20 C.F.R. § 416.926a(g)(2). She is an adolescent at present. 20 C.F.R. § 416.926a(g)(2). In 2018 Mr. Rivera applied for SSI on behalf of V.A.R. alleging disability based on attention deficit hyperactivity disorder combined type ("ADHD") and a learning disability in English and Math. R. 58.

### B. The ALJ's Decision

In early 2020 the ALJ issued her decision finding that V.A.R. was not eligible for SSI because V.A.R. had not been under a disability, as defined by the Social Security Act. R. 12-23. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's three-step sequential evaluation to determine whether an individual under the age of eighteen is disabled.[1]

---

[1] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. When the claimant is under the age of eighteen, the ALJ must assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; and (3) has an impairment or combination of

At step one, the ALJ found that V.A.R. had not engaged in substantial gainful activity since December 11, 2018. R. 13. At step two, the ALJ determined that V.A.R. has two severe impairments: (1) a learning disorder in English and Math and (2) ADHD. R. 13. At step three, the ALJ compared V.A.R.'s impediments to those contained in the Social Security Listing of Impairments ("listing").[2]

The ALJ found that V.A.R.'s impairments do not meet, medically, or functionally equal the severity of listing 112.11 (neurodevelopmental disorders). R. 13-14. The ALJ found moderate limitations in all listing categories.[3] R. 13-14. Further, the ALJ found that V.A.R.'s impairments do not functionally equal the listings.[4] R. 14. The ALJ found that V.A.R. has a marked limitation in acquiring and using information; a less than marked limitation in attending and completing tasks, in interacting and relating with others, and in the ability to care for herself; and no limitation in moving about and manipulating objects and in health and physical well-being. R. 15.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential. I am bound by her findings of fact to the extent that those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing to *Plummer v. Apfel*, 186 F.3d

---

impairments that meet, medically equal, or functionally equal the criteria listed in the Social Security regulations mandating a finding of disability. See 20 C.F.R. § 416.924(a)–(d).

[2] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a minor's severe impairment or combination of impairments meet, medically equal, or functionally equal the criteria of a listing, that minor is determined to be disabled. 20 C.F.R. § 416.924(d).

[3] These listing categories are (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. Part 404, Subpt. P, App. 1.

[4] The domains evaluated to determine functional equivalency of listing 112.11 are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). If an ALJ finds an extreme limitation in one of these listings or a marked limitation in two, then the ALJ shall find the minor's limitation functionally equals the listing and is disabled. *Id.* § 416.926a(d).

422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing to 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting to *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn a

decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing to *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in her opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000). An ALJ must also address all pertinent evidence in the record. *See id.* at 121-22. When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain her resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

An ALJ's decision is to be "read as a whole," *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379–80 (3d Cir. 2004) (unpublished) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett,*" and a finding that the "ALJ's conclusions [were] . . . supported by substantial evidence."). By reading the ALJ's opinion as a whole against the record, a reviewing court should be able to understand why the ALJ came to her decision and identify substantial evidence in the record supporting the decision. *See Burnett*, 220 F.3d at 119-20; *Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)*.

## DISCUSSION

### A. Statutory and Regulatory Scheme

In evaluating Mr. Rivera's claim, the ALJ undertook a three-part analysis required by regulation. R. 12-23. First, the ALJ determined that V.A.R. was not engaged in work which could be considered "substantial gainful activity." R. 13; 20 C.F.R. § 416.924(b). Next, the ALJ determined that the complainant's impairment or combination of impairments was "severe." R. 13; *Id.* § 416.924(c). There is no dispute over these two findings.

For a finding of disability, the third part of the analysis requires that the claimant's impairment "meet, medically equal, or functionally equal in severity a listed impairment" as set forth in *Id.* Subpart 404, Subpart P, Appendix 1; *id.* § 416.924(d). R. 13. The ALJ found that V.A.R. did not meet or medically equal a listing criterion, 112.11, because "the medical evidence does not establish that the claimant's impairment(s), individually or in combination, meet or equal in severity the criteria of a listed impairment." R. 13.

Then, the ALJ turned to the question of whether V.A.R.'s impairment was "functionally equivalent" to listing 112.11 because it caused "marked limitations in two domains of functioning or an extreme limitation in one domain." R. 14-23; 20 C.F.R. § 416.926a(d). A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). An "extreme" limitation is one where a child's test scores are three standard deviations or more below the norm, or where it "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).

The functional domains considered by the ALJ were (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with

6

others, (4) moving about and manipulating objects, (5) caring for self, and (6) health and physical well-being. R. 15; 20 C.F.R. § 416.926a.

### B. The Parties' Arguments

Mr. Rivera argues that the ALJ's determination of a moderate limitation in understanding, remembering, and applying information is unsupported by the evidence, because the finding conflicts with the ALJ's finding of a marked limitation in the functional equivalence domain of acquiring and using information. Doc. No. 10, at 8-9. I agree. The Commissioner seems to concede, for purposes of argument, that there is no significant difference between the first listing category – "understanding, remembering and applying information" – and the first domain – "acquiring and using information." Comm'r Br. at 4 n.1. I don't see any semantic space between the two formulations. Thus, it makes no sense to find marked limitations in the functional equivalence domain and only moderate limitations in the listing category. Nevertheless, as the Commissioner points out, V.A.R. would still not be disabled without a finding of marked limitations in at least one other listing category. *Id*. So the focus of the dispute narrows to whether V.A.R. has marked limitations in another domain.

Mr. Rivera argues the ALJ erred in determining a less than marked limitation in the functional domains of interacting and relating with others; concentrate, persist, or maintain pace; and attending and completing tasks. Mr. Rivera argues that the ALJ's determination is not supported by substantial evidence because the ALJ failed to resolve evidence contradicting her decision; failed to properly contextualize V.A.R.'s improvements; and granted conflicting weight to the complainant's psychiatrist's (Gerald Deeney, Ph.D.) Functional Questionnaire, COMHAR treatment notes, teacher questionnaire, and V.A.R.'s Individualized Education Program ("IEP") report. *Id*., at 10-

7

14. Finally, Mr. Rivera requests that I direct an award of benefits because there is a fully developed record and further delay in relief would contravene justice. *Id*.

The Commissioner responds that the ALJ's determinations were supported by substantial evidence, as she reviewed and weighed the evidence properly in reaching her decisions. Doc. No. 11, at 1. In reply, Mr. Rivera argues that the ALJ improperly disregarded negative behavior at school and relied too heavily on improvements in behavior. Doc. No. 12, at 2. Mr. Rivera reaffirms the ALJ erred in her analysis regarding Dr. Deeney's testimony. *Id*., at 3-7.

After considering the parties' filings, I find that the ALJ erred by failing to properly resolve contradictory evidence in the record.

### C. The ALJ erred by finding that Dr. Gerald Deeney's opinion was not wholly persuasive for a reason not supported by the record.

When evaluating whether a claimant meets the listing for a mental disorder, the ALJ must assess whether the claimant satisfies the "paragraph B criteria," requiring a finding that the claimant has an "'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A(1)(b). The four paragraph B criteria are "understand, remember, or apply information;" "interact with others;" "concentrate, persist, or maintain pace;" and "adapt or manage oneself." *Id*. § 12.00E(1)–(4). While a determination that a claimant's impairment meets relevant listing criteria is reserved for the ALJ, *see generally* 20 C.F.R. §§ 404.1525, 416.925, the ALJ must nevertheless sufficiently explain her rationale for discounting relevant evidence, including consultative opinions, *see Burnett*, 220 F.3d at 119-21. A conclusory opinion alone cannot justify remand, but remand is permissible when the Court cannot conclude if there is substantial evidence supporting

the ALJ's reasoning. *Id.* at 119 (citing to *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981)). I have a "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Harris*, 642 F.2d at 705.

Mr. Rivera's claim is subject to the new Social Security regulations regarding the treatment of medical opinions, which became effective on March 27, 2017. The new regulations no longer require an ALJ to give a certain evidentiary weight to a medical opinion, but instead require the ALJ to focus on the opinion's persuasiveness of each opinion. *See* 20 C.F.R. § 416.920c(a).

The regulations note that supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be." *Id.* § 416.920c(b)(2). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 416.920c(c)(2). The regulations also instruct an ALJ to consider the physician's relationship with a claimant, whether the physician "has received advanced education and training" as a specialist, and other factors such as the medical source's familiarity with other evidence. *Id.* § 416.920c(c)(3)–(5). Only the concepts of consistency and supportability, however, must be addressed by ALJs in their written opinions. *Id.* § 416.920c(b)(2).

Despite providing a new analytical framework for ALJs, these regulations "[do] not authorize lay medical determinations by ALJs" and do not "relieve the ALJ of the

9

responsibility of adequately articulating the basis for a medical opinion evaluation." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *4 (M.D. Pa. May 19, 2021). "While the ALJ is, of course, not bound to accept physicians' conclusions, [she] may not reject them unless [she] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 F. App'x 163, 168 (3d Cir. 2003) (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (internal quotation omitted).

Dr. Gerald Deeney supervised V.A.R.'s psychological treatment beginning in February 2018, and continued at least through November 6, 2019, the date of his completed SSI Childhood Disability Functional Questionnaire. R. 1361. The questionnaire used the six functional equivalent domains as the framework for Dr. Deeney's review of V.A.R.'s difficulties. *Id.* Dr. Deeney indicated that V.A.R. had no difficulties in either moving about and manipulating objects or in general health and well-being. R. 1366-67. In interacting and relating, Dr. Deeney noted that V.A.R. had some difficulty and wrote that the "teacher requests to parent that [V.A.R.] is too talkative in class." R. 1363. He documented that there was some difficulty in caring for self and explained that V.A.R. requires pharmaceutic aid to sleep. R. 1365. In acquiring and using information, Dr. Deeney noted that V.A.R. had a marked or serious difficulty and wrote that she has an IEP for learning support. R. 1362. Dr. Deeney also noted V.A.R. has marked difficulties in attending and completing tasks and explained that "[V.A.R.] receives treatment with stimulant medication to attend and complete tasks in school." R. 1364.

In her opinion, the ALJ first summarized the relevant facts.[5] R. 16-18. Then, she reviewed the portion of the record that analyzes those facts.[6] R. 18-22. Then, after each review, she placed weight on the analysis in comparison to the relevant facts. *Id*. The ALJ concluded that the State agency consultant's opinion was the most persuasive and consistent with the record. R. 22. She determined that the 3rd grade teacher's questionnaire, while not a medical opinion, had probative value, because "the teacher is able to observe the claimant on a frequent basis in a relevant setting." R. 20. The ALJ found Dr. Deeney's opinion "not wholly persuasive," in part because "it is not clear that the claimant's assessment reflects her function when she is taking medication." *Id*. The ALJ determined that Dr. Deeney's opinion was not consistent with the "largely normal" clinical observations in the doctor's medication progress notes. *Id*. at 20-21.  The ALJ noted that Mr. Rivera, when testifying, acknowledged that V.A.R. is "calm" while on medication. R. 20.

The ALJ is not required to accept Dr. Deeney's assessment, but she is required to adequately articulate her reasons based on evidence in the record. She failed to do so, for reasons I will explain.

First, V.A.R. has been on Vyvanse for her ADHD[7] since January 5, 2018. R. 733. Dr. Deeney began supervising V.A.R.'s treatment one month later in February 2018. R. 1361. Dr. Deeney completed the SSI questionnaire on November 6, 2019. *Id*. The initial

---

[5] The evidence reviewed includes (1) Mr. Rivera's hearing testimony, (2) V.A.R.'s hearing testimony, (3) longitudinal evidence, (4) HeadStart reports, (5) COMHAR treatment reports, treatment plans, and medication assessment notes, and (6) education records, including V.A.R.'s IEP.

[6] This evidence includes (1) a teacher questionnaire, (2) Dr. Deeney's functional questionnaire, (3) two different consultative examinations, one by Michael Schuman, Ph. D., one by Andrea Woll, D.O., (4) the State agency consultants, and (5) the pediatrician records.

[7] Vyvanse was prescribed initially on January 5th, 2018, and was renewed with a lowered dosage on September 12th, 2018. R. 733. V.A.R.'s prescription was modified back to the higher dosage on September 11, 2019. R. 1301. It is marketed as an ADHD medication. Vyvanse, https://www.vyvanse.com (last visited Sept. 27, 2022).

11

prescription of Vyvanse predates Dr. Deeney's medical relationship with V.A.R. and Mr. Rivera's testimony at the ALJ's hearing. At the time of his analysis, Dr. Deeney had directly supervised V.A.R.'s treatment for more than one medicated year. Nothing in the record indicates that V.A.R. was not consistent in her medication usage. Rather, her medication compliance has been consistent, as chronicled in her treatment records and her father's testimony.

Mr. Rivera testified before the ALJ on January 9, 2020. R. 40-41. As the ALJ indicates, Mr. Rivera testified to V.A.R. being "calm" while on medication. *Id.* The ALJ omits that Mr. Rivera also testified that he provides V.A.R. her medication every morning, but that it may wear off as the day progresses. R. 40-41. The Medication Reports indicate that V.A.R.'s Vyvanse prescription is for "every morning." R. 733. Mr. Rivera's testimony is consistent with the Medication Reports.

V.A.R.'s COHMAR outpatient treatment plans are provided in the record. According to the record, V.A.R. attends individual therapy on a weekly basis. *See e.g.*, R. 693. However, these plans are written "every 120 days or 15 visits[, w]hichever comes first." *See e.g.*, 695. While these outpatient treatment plans are not an in-depth recounting of each weekly, hour-long therapy session, the plans do provide adequate information regarding general issues and progress.[8] For about half of her nearly two-year tenure,[9] a long term recovery goal for COMHAR was to "assist [V.A.R.] on following

---

[8] Each one provides the date the report was created; problem definition statements, which include quotes from the attending parent on what issues are persisting or what behavioral accomplishments have been made; the long term recovery goal; objectives; modality; interventions; progress; and strengths and barriers. *See e.g.*, R. 693.

[9] V.A.R. first interacted with COHMAR on October 8, 2014. R. 693. The last interaction in the record is on September 30, 2019. R. 1360. This is nearly five years. However, the first indication that COMHAR prescribed V.A.R. any medication is on November 3, 2017. R. 717. Therefore, instead of using her five years' tenure, I have instead used the time-period where V.A.R. was prescribed medication.

her medication management." R. 693-97. These plans were created on July 12, 2017, October 16, 2017, February 5, 2018, May 31, 2018, and August 21, 2018. *Id*. There is no indication at any point that V.A.R. was non-compliant with her medication. The plan dated July 12, 2017—the very first of the series—outlines that "[V.A.R.] continues following all her medications every day and having positive results." R. 697. There is no support in the record for the notion that Dr. Deeney's opinion is based on V.A.R. being unmedicated.

After opining that V.A.R. had marked limitations in every sub-domain of the domain "attending and completing tasks," Dr. Deeney commented "Patient [V.A.R.] requires treatment with stimulant medication to attend and complete tasks in school." R. 1364. The Commissioner (not the ALJ) suggests this language gave rise to the ALJ's dubiety about whether Dr. Deeney's opinion was based on V.A.R.'s behavior while

medicated or unmedicated. Comm'r Br. at 7 (citing R. 1364).[10] That is not a plausible reading of Dr. Deeney's comment, given the fact that V.A.R. has been medicated and compliant through the entirety of her relationship with Dr. Deeney. More importantly,

---

[10] Here is a copy of page 1364:

**ATTENDING & COMPLETING TASKS**

| This child has difficulties | Never | Some Difficulty | Marked or Serious | Extreme or Very Serious |
|---|---|---|---|---|
| Waiting to take turns | | | ✓ | |
| Controlling the impulse to blurt out answers | | | ✓ | |
| Being easily distracted | | | ✓ | |
| Following through on instructions | | | ✓ | |
| Concentrating without adult supervision | | | ✓ | |
| Carrying out simple instructions | | | ✓ | |
| Dealing with frustration / gives up easily | | | ✓ | |
| Keeping pace with other children | | | ✓ | |
| Keeping track of possessions | | | ✓ | |
| Completing tasks on time | | | ✓ | |
| Paying attention / daydreams instead of attending to activities | | | ✓ | |
| Doing tasks without bothering others | | | ✓ | |
| Staying on tasks without being reminded | | | ✓ | |
| Without supervision | | | ✓ | |
| That require extra encouragement | | | ✓ | |

Based on your knowledge and experience, please rate how well this youngster focuses and maintains attention; begins, carries out, and finishes activities; performs at a pace similar to other youngsters; and transitions between activities:

PLEASE COMMENT: Patient requires treatment with stimulant medication to attend and complete tasks in school

this is not the ALJ's explanation, but the Commissioner's. The ALJ merely cited to Exhibits 21F and 32F – medication progress notes - and stated they are not consistent with Dr. Deeney's report "as those reports [the Exhibits] note largely normal clinical observations." R. 21. But these two Exhibits, found at R. 705-846 (Exhibit 21F) and 1269-1322 (Exhibit 32F) are replete with abnormal clinical observations. *See*, *e.g.*, R. 714 (memory, attention, and concentration impaired), 715 (impaired insight/judgment), 717 (diagnosis and list of medications in 2018), 1274-75 (diagnosis and list of medications in 2019).

The ALJ's explanation for why she found Dr. Deeney's report unpersuasive seems to conflict with the record evidence. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' *Plummer,* 186 F.3d at 429 (quoting *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993)). Dr. Deeney's report is important information that, if credited, would lead to a finding of marked limitations in a second domain, and consequently, a finding of disability. Upon remand, the ALJ should reevaluate Dr. Deeney's opinion against the evidence of record. Deference to the ALJ's fact-finding role requires that she, not I, perform this reevaluation.

### D. The ALJ's errors warrant a remand but not an award of benefits.

Mr. Rivera argues that he is entitled to an award of benefits rather than a remand because the record is fully developed, and the record is clear that V.A.R. is entitled to benefits. Doc. No. 10, at 14-15.

A reversal with direction to the Commissioner to award benefits is justified where there has been inordinate delay not attributable to the petitioner, the existing record contains substantial evidence supporting a finding of disability, and it is unlikely that

any additional material evidence will be unearthed on remand. *See Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (awarding benefits when delays were not attributable to the claimant, the record was unlikely to change, and substantial evidence established that claimant suffered from a severe mental disability). Here, while Mr. Rivera is not responsible for delay, the evidence in the record does not weigh decisively in favor or against disability. V.A.R. is also now an adolescent, requiring a different benchmark analysis. *See* 20 C.F.R. § 416.926a(g)(2)(v). Additional school and treatment records over the last two years may be beneficial additions to the record, and assist the ALJ. Under the circumstances I find that a remand is warranted.

## CONCLUSION

Based on the above analysis, Mr. Rivera's request for review is granted, the final decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for further proceedings.

BY THE COURT:


*/s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**